Three minutes for you, Bob. The clock is counting down, so just keep track of your time. Okay. Thank you. May it please the Court, my name is Jim Hunt, and I represent Juan Salazar. As the Court knows, we claim three errors. The first one I'm going to address is the Montana Code Annotated 271703 issue. The district court's error would have allowed defendant to delegate its nondelegable duty by permitting testimony that subcontractors Alcarez and Oscar Cruz, to whom I will refer as Cruz throughout the argument, were responsible for safety on the job site. That violates Montana Code Annotated 271703, which prohibits comparison of fault with any person who could have been, but was not named as a third-party defendant. Now, there are three possible entities who could have been responsible for the accident here. One is A&J Construction, the defendant. One is the plaintiff, Juan Salazar, who are both parties, and the third one is Cruz, who is a non-party. The jury found A&J negligent, but did not find that it caused Salazar's injuries. Can I ask you this right on that point? I'm just looking at the jury's verdict form here. The finding of negligence, that means that the jury found that A&J did breach its nondelegable duty. So it didn't. The effect of whatever evidentiary errors you think occurred at trial, it seems like it didn't matter because the jury found that they did have a duty and they breached it. So why doesn't that just end your argument on appeal right there? Because, Your Honor, the real question here is that who caused the injury, and when you bring in a nondelegable party, as the Court did here, you then share that cause, and 27-1703 prohibits that under the State of Montana. It wasn't a strict liability statute. It's not, but it's a nondelegable duty. But you're confused. I think you're collapsing duty and causation. Right. That's what I'm hoping you can address, because I agree with Judge Pyle. No, I don't think so at all. I think what happened here is that the court or the jury found that there was negligence. Then they go to causation, and who could have caused the accident? Who could have caused the accident here is either A&J Construction or Oscar Cruz, the two subcontractors, and the Court, by asking, by allowing the evidence in where and the question, Your Honor, to the expert was to ensure Oscar Cruz were working safely on the job site, is it correct that A&J held both those subcontractors responsible for safety to the workers? And the answer to that was yes, and that is sharing the nondelegable duty. Yeah, but see, that's what I'm saying. Your complaint at trial, which, look, I think you had a valid complaint, was that, and you're going to prejudice my client's case if you do that, right? Right. Right. Right. That makes perfect sense to me. But all I'm saying is that I then look at the jury verdict, right, and they did find that we know they found that your the defendant rather had a duty and that they breached it because they found negligence. But they didn't find causation.   It could have been Oscar Cruz. It could have been Oscar Cruz. It could have been A&J. That's the shifting responsibility. I mean, here, you know, Your Honor, the difference between a delegable and a nondelegable duty is that typically by contract you say to somebody here, this is your delegable duty, so you have this delegable duty. And what the district court did here is they conflated the defenses of delegable and nondelegable duty into one by allowing that evidence in. That's the error here. If the district court is right and this court affirms it, there's essentially no difference between a delegable and a nondelegable duty, and it turns Montana law on its head as far as the Montana Safety Act goes. You can't delegate the duty. You can't share the duty. And in Owen, Your Honor, the case that's really the focus here, what the court said, and I'm going to quote, is that general contractors like A&J here who assume nondelegable contractual duties cannot avoid liability by attempting to shift the responsibility to someone else, particularly to subcontractors. And when you do that, so, yeah, A&J was negligent. We don't know why the jury found they were negligent. But, okay, but on the causation front, doesn't it seem like the most likely thing that happened is that the jury said, yeah, you know what, defendant, you were, you did have this nondelegable duty, you did breach it, but the real cause of the accident was the plaintiff's own failure to use the, right? Well, maybe. How do we know that? We can't talk to the jurors. If I stood up here and I said to you, Your Honor, I talked to Juror 5 and here's what Juror 5 said, you wouldn't accept that. So we don't know that. I know, but it's your burden on appeal to show that this evidentiary issue that seems to go to a different element of the claim prejudiced your client. And I don't, how can we make that determination? I don't think it's an evidentiary issue. I think it's a de novo legal issue, Your Honor, because it violates the statute. It's a different standard. It, it, it, they violated, they violated 27-107-03 by sharing that duty. Counsel, did they ever argue to the jury that, in fact, they were sharing the duty or were they merely using it to show that they were a careful contractor and would instruct the subs? They never argued to the jury, Your Honor. But, again, Olson instructs us, Olson v. Schumacher says you can't do this with subcontractors. It's different. There's contractivity. They force it on them. They, they, the real danger here is it's hard for the jury to separate out. It's an extremely unusual verdict when you have negligence and no causation. And so what could be the causation? I submit there are two entities, A and J and Cruz, and it wasn't A and J, so it must have been Cruz. That's what I'm saying. The, the obvious answer, I think, to the question you just posed is that the jury concluded that it was the plaintiff's own, I don't know, is it called contributory negligence? In that may be, Your Honor. But, first of all, I think it's a de novo standard, so I don't think it's our burden to prove it more probably than not. But I think it's a, if there's a risk, then, then, then that's the case. But I think it is the. But, you know, we know from the jury's verdict form, the special verdict form, that, you know, when they answered question, they answered question 1, was A and J negligent? They said yes. When they went to question 2, was A and J's negligence a cause of injury to Salazar? They said no. And then the instructions to the jury was if you answer no, do not answer any further questions. Right. End of story. Right. Judgment for the plaintiff on the special verdict. For the defendant. I mean, for the defendant on the special verdict. But we're not. And there was no challenge, as I understand it, in the appeal here. You're not challenging any of the court's jury instructions. Well, we did challenge none of them. No, no, no. The way I read your brief, you didn't argue that any of these instructions were erroneous. Well, as to this issue, that's correct, Your Honor. Right. I think it's, you know, I personally think it's an odd verdict. I mean, I kind of agree with you to some respect, but we're not here to substitute our judgment for that of the jury. No, you're not. But you're also not here to change Montana law, which is this delegable duty, non-delegable duty can't be shared. And that's what this does. I mean, it's not. Didn't the instructions tell the jury that they had, that A&J had a non-delegable duty? Yes. And so you still let in the evidence in violation of 27-103. Their remedy here was to sue Cruz. They could have done that. They could have brought him in as a third-party defendant. That's what A&J was supposed to do here. If they're going to blame him, if they're going to try to shift responsibility, they have to sue Cruz. And they didn't do that. That's what the law requires. Under Montana law, as you understand it, if the contractor had instructed the subcontractors, we don't care about OSHA. We don't care about any safety things. We want you to go up there and drink on the job. Some crazy factual scenario like that. Wouldn't then the instructions given by the contractor, the subcontractor, be relevant in a negligence case? That's right, because they're not sharing safety. They're not sharing their duty. That's not part of the duty. But wouldn't the converse also be true? That if a contractor is telling subcontractors you need to behave safely, even if the subcontractor can't be found liable for his activities on the site because it's non-delegable, isn't it still relevant evidence to whether the contractor was acting in a responsible manner? Your Honor, not according to Owen, where it says the real danger in shifting responsibility to a subcontractor is, particularly a subcontractor, is that the jury's going to get confused. You can't do that, I don't think. I just don't. It is taking that duty and it's shifting it over. Are you aware of any cases in Montana that say you, in a case involving a contractor and subcontractors, what the subcontractors are instructed by the contractor is legally irrelevant? No. Well, I think Owen says that. Yes, it's legally relevant that you can't share that responsibility. That's different. Sharing responsibility is different than any evidence as to what happened between the contractor and the subcontractor. But it doesn't come up when it comes to safety. I mean, it comes up when you say, here's how you frame the building. But it doesn't come up when it comes to safety because they can't do it. That's the whole point of this. They can't shift that over. In addition to that, Your Honor, I want to jump ahead here to the comparative negligence argument. That should have never come in in the first place because there are two criteria here that are set forth in the brief. I'll address foreseeability first. And that is that that's a legal determination. The first criteria is foreseeability. If the injury isn't foreseeable, if the harm isn't foreseeable, comparative negligence doesn't come in. Foreseeability is found in duty. Duty is a legal question. If there's no foreseeability, we shouldn't even be here. We should be out at the summary judgment stage. But, of course, ANJ had a duty under these circumstances. So the second criteria is that ANJ argued in its brief that Salazar could have avoided the hazard, but didn't argue that Salazar could have avoided the hazard without endangering his employment. That's a critical component of this. I thought that maybe it was evidence from your client himself that he could have done the job using the ‑‑ I can't remember what it was, the fall protection, I guess. He could have done it. That was undisputed, actually. Am I wrong on that? He could have done it, Your Honor, but there were no anchor points set up. There was no fall plan at all. They did not comply with OSHA. I think that's undisputed. And even if you have an OSHA-compliant plan, the hazard still exists, according to ANJ. They say in their own fall protection plan that all they can do is minimize the hazard. You can't get rid of the hazard. It exists. So he can't avoid the hazard without endangering his employment. The hazard is going up there in the first place. I thought the hazard was going up there without any fall protection. No. I don't agree with that, Your Honor. But ‑‑ Wait, wait. I thought in fact, again, that your client admitted that had he been using the proper fall protection, he would not have hit the ground. But I don't agree with that, Your Honor. But let me also read exactly what Olin says, okay? The subject harm was not a reasonably foreseeable consequence of the contractor's breach of the non‑delegable safety duty. So you have to assume first that we're right about the non‑delegable safety duty. Then you get to whether they can introduce it. And if the duty is breached, then clearly the hazard can't be avoided. So there's an assumption there that the jury is going to find negligence and causation. Then you don't get the causation at all or comparative at all if the breach was there of the non‑delegable duty and its reasonably foreseeable consequence of the non ‑‑ the subject harm was not a reasonably foreseeable consequence. I think I confused that. Do you understand it? I think I followed you. Okay. So I don't think comparative negligence should have been in the case at all, Your Honor. I'm going to stop there unless there are questions. No, you can reserve the rest of the time for rebuttal. Hi, police and court. My name is Todd Stubbs. I represent the Respondent A&J Construction. It's been a long, hard road Jim and I have had, and now we finally have come to an end. I want to put the case into some perspective with respect to the strategies  and I hopefully will enlighten the court as to how I marshaled the evidence and tried to get some of the evidence in. I was successful most of the time, unsuccessful some of the time. The Montana Safety Act requires that general contractors provide or require the use of safety precautions. They require that the general contractor implement practices or processes in which safety equipment or safety devices will be used on the construction site. And then they're given this broad duty to do whatever else is reasonably necessary to keep the site safe. So looking at that statute and knowing that that statute was going to control the trial, I began to think, what is the jury going to want to know? And the first thing that the jury needed to know was that fall protection was going to avoid these traumatic injuries that the plaintiff was claiming. That was the safety device that was required under the statute. The next thing I did was I wanted to get in evidence that we had put something in place so that fall protection would be used on the construction site. And what we did was we entered into a contract, when I say we, A&J, so please excuse me, we entered into a contract with the subcontractors and said, you need to follow OSHA, you need to work safe, you need to train your men on the use of fall protection, you need to use fall protection, and if you don't, if you are not responsible under the contract for the safety of the employees, we are going to discipline you. That contract right there, the fact that we have the authority to discipline, if the subcontractors did not implement safety on the job site, put us in a nondelegable duty. We took control of safety by having that. That sounds to me like you're trying to shift the duty to someone else. And that's why I don't think it was right for the judge to let in the contract between your client and the subcontractor. I mean, I hear your technical argument, but the way a jury is going to hear that is just the exact opposite of what you just said a second ago. But, Judge, what I wanted to show the jury was, is that we put something in place so that fall protection would be used on the job site, and it was. Did you put any, did A&J put any anchor posts up there on those trusses? We did not put anchor posts on the trusses because they were not necessary. Mr. Salazar had a construction expert out of New York who I cross-examined and in cross-examining him he admitted that an anchor point was sufficient by using either the top cord or the bottom cord of the truss itself. Other evidence came in that those workers used the same type of anchor point. There was no need for any sophisticated screw-in bolts or anything like that. They essentially just, they have a. Was there any evidence that A&J said this is how you anchor? Yes. Yes. We, we not only, the evidence was not exclusively about a contract that we had with the subcontractors. We put on a job training called tailgate meetings before work, and we did that, we tried to do that once a week and went over fall protection, stressing that it be needed. The subcontractors themselves had the men go to classes and learn about fall protection. So there were, there were a lot of different levels of implementation of the process to ensure that fall protection was used on the site. But, Judge, going back to your question, the context in which I wanted this evidence to come in was used exclusively for that purpose, the scope of that. And under 105, Federal Rule 105, I am permitted to do that if it can come in under the proper scope. And at that point, it was up to Mr. Hunt to ask for limiting instruction. And he didn't do it. Well, I mean, no. I think that he made the right objection, and it's just the judge disagreed. But, listen, I'm not saying that you weren't entitled to put on evidence of what your client was doing at the work site to make sure that, in fact, a safe work environment was being maintained. Of course, that's, how else are you going to prove that you complied with a nondelegable duty? I'm just saying that the testimony I read, I guess it was questions I think that you posed about the contractual nature of this duty that the subcontractor took on. To me, that was just, it should have been kept out on 403, or 403, I can't even remember now if that's the right evidence rule. It is 403, Your Honor. I'm thinking of the State court. What was the rule in the State court? Okay. Okay, but under 403, Your Honor, I mean, you have that balancing test between probative evidence and then prejudicial evidence. And what outweighs what? And the judge did do a 403 analysis and said, I understand that this is prejudicial to a certain extent, but it's also probative, and this probative evidence outweighs the prejudicial effect that it's going to have. Plus, I'm going to diffuse any of that prejudice by using Instruction 7 and using Instruction 13, and allowing Mr. Hunt to get up there at closing and explain Instruction 7 and Instruction 13 without my objection. And when I went to closing, I did not mention subcontractors or anything else. I went straight for the throat and said he didn't wear his fault protection, he chose not to, and he knew he should have. If we look at the whole record and everything that went on to diffuse any types of prejudice, including the overwhelming evidence, the jury verdict is not untainted. I mean, the evidence was overwhelming that Mr. Salazar knew when, where, how to use fault protection, and he admitted that he chose not to that day. He admitted he wouldn't have hit the ground if he would have been wearing it. So I guess, Your Honors, I guess if you look at five questions in isolation, I can see your point, Your Honor, but when you look at the whole record and you had an instruction on non-delegable duty, and Mr. Hunt's telling the jury, Mr. Stubbs or A&J cannot point the finger at anybody else, Instruction 13, Mr. Stubbs and A&J cannot point the finger at anybody else. Jurors aren't stupid. Well, and I think the jury verdict apparently bears it out, right, because they did find that your client breached its non-delegable duty. I mean, I guess that seems to me that's maybe your strongest point in terms of no harm, no foul or whatever, that whatever error might have occurred here didn't ultimately taint the jury's verdict. But how do you explain, I'd just like to hear you explain the, it is kind of a strange verdict. Do you admit that? Finding a breach but no causation? Well, this is the interesting part of the statute. Sub 2 says, with the exception of footwear, the general contractor must purchase, furnish and require the use of all safety or health and safety devices. Provide protective clothing. Provide safeguards. One of the things that A&J did not do, that they were negligent in, was not keeping a record of each man's training in fall protection. And I admitted that in closing. I said we were wrong about that. Mr. Hunt argued in his closing that we had not provided him a harness. Well, we had not provided him a harness because he had his own. And so there were things that, and like the district court said when denying the new trial, there were things out there that A&J may have violated in terms of OSHA and the Montana Safety Act. But those things had nothing to do with how Mr. Salazar fell, what caused him to fall. I mean, the fact that you don't keep safety records didn't cause him to fall. Is there anything about the statute, the Safety Act, that precludes comparative fault? No. Comparative fault always available if they meet the standard, some negligence that the plaintiff was negligent. Comparative fault under the case that we cite, Olson v. Schumacher. This is very interesting. It's a very good question. Okay. So you have the Montana Safety Act. And the only way under the Montana Safety Act is you have, for comparative negligence, you have to show the plaintiff, one could have avoided the danger or the hazard, I should say, avoided the hazard without placing his employment in jeopardy, or the A&J's negligence was reasonably foreseeable that A&J's negligence would have caused the damage. So we argued that, well, first of all, we have enough evidence that if Mr. Salazar would have been wearing his fall protection, he wouldn't have hit the ground. The ground was the hazard. Mr. Hunt wants to argue that the fall is the hazard. It's not. It's the ground. It's like you've got a fire, you're out camping and you've got a fire. As the hand goes in motion, it's not in trouble until it hits the fire. And it's the same thing with the ground in this case. And the evidence was overwhelming that he could have avoided that hazard had he wore his fall protection. Would he have maybe been injured, bumps, bruises, those kinds of things? Sure. But he would not have had the traumatic injuries that he was claiming in this case had he been wearing that fall protection. So I felt like we had convinced the jury on that first prong. The other prong, and I argue it in my brief, is that let's say we don't have safety records. Well, is it reasonably foreseeable that not having safety records will cause a man to fall off of a top plate when he knows he should have his fall protection on? And it's kind of a silly question. But that's how the analysis works. I don't have anything else. And the jury is instructed along those lines. What's that? I'm sorry. The requirements for comparative fall. Absolutely. And can I just say one other thing? This was something I didn't bring up in the briefing. But it's an interesting issue with comparative negligence. If you look at the special verdict, the A and J was found negligent, but was not the cause, so it was over. Right. But if you continue to look at the special verdict, they never get to comparative negligence. That's because the verdict form cut them off. Right. But did it cut it off because A and J actually wasn't negligent? I mean, in the sense of causing Salazar to fall? And so you have to, in order for you to actually be able to extend a comparative negligent analysis, well, A and J has to be negligent in the first place. And certainly we could have been negligent in not keeping safety records or not giving him a harness when he already had one. I mean, all other sorts of things that the jury could have found A and J negligent of, unassociated at all with Mr. Salazar not wearing his fall protection. Thank you, Your Honors. Okay. Thank you. Your Honor, with all due respect, I don't think Rule 403 applies here, because this is a de novo review. It's a violation of the statute. And I apologize for not putting this in my brief, but I commend the Court's reading to the Plum case, which is 927 Pacific 2nd 1011. And it explains why it's unconstitutional in Montana to have to try the empty chair defense. And I should have had it in there. I had the empty chair in the brief. But it explains why it's so important not to share this responsibility, to have to try this empty chair situation. So, Your Honor, we'll never know whether it was Cruz or Salazar who the jury found responsible for the accident here. But we know it was one of the two. And I commend the Court's reading also to Nelson v. Brunswick, a Ninth Circuit case, which says, and it's in the brief, that the standard is that it may be prejudicial or it may have affected the verdict. And I don't know how you can say it didn't affect causation here, because really what we were focused on is causation. Finally, the Court, I would ask it to ask itself rhetorically, if the responsibility can be shared, ask yourselves if it's okay to admit evidence about the contract between Cruz and A&J, exactly what is the difference between a delegable and a non-delegable duty. I submit to you there is none. Thank you. Roberts. Okay. Thank you very much for your arguments. Interesting case. We'll submit the matter at this time. And that ends our session for today and for the week.
judges: PAEZ, WATFORD, OWENS